UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

GREGG WALKER and
HEATHER HOLMES,

                    Plaintiffs,

                                                    Case No. 3:25-cv-00214

          v.

KIRK BANGSTAD,
MINOCQUA BREWING COMPANY LLC, and
MINOCQUA BREWING COMPANY SUPER PAC,

                    Defendants.

---

### DEFENDANTS' BRIEF OPPOSING PLAINTIFFS' MOTION TO REMAND

---

### INTRODUCTION

Plaintiffs Gregg Walker and Heather Holmes sued defendants Kirk Bangstad and Minocqua Brewing Company (the Company) for invasion of privacy under Count I of their complaint. In Count II, plaintiffs seek a declaration and the remedy of alter ego/piercing against a brand new defendant, Minocqua Brewing Super PAC (the PAC), a federally registered independent expenditure political action committee. *Complaint*, ¶ 48. Plaintiffs allege the PAC's expenditures are for the benefit of Bangstad and that the PAC is Bangstad's instrumentality and under his complete control. Plaintiffs want to pierce the PAC's veil, presumably to fund the collection of any judgment under their invasion of privacy claim against the non-PAC defendants.

The PAC, with the consent of the other defendants, removed this case to this court based on the material federal questions under the Federal Election Campaign Act (FECA) which, through the Federal Election Commission (the FEC), governs the contributions and expenditures of political action committees. A case "aris[es] under" federal law within the meaning of 28 U.S.C.

§ 1331, if "a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief ***necessarily depends on resolution of a substantial question of federal law***." *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.,* 463 U.S. 1, 27-28 (1983) (emphasis supplied).

Plaintiffs' motion for remand gives § 1331 and Count II the most simplistic possible construction. They claim no federal question exists because the complaint does not allege any violation of FECA and plaintiffs do not seek FECA enforcement. *See, for example, Pl. Brief,* pp. 1, 6, 7. That, however, does not answer the jurisdictional question. A plaintiff cannot avoid a federal forum by "artfully pleading" what is actually a federal claim solely in terms of state law. *Tifft v. Commonwealth Edison Co.,* 366 F.3d 513, 516 (7th Cir. 2004). Plaintiffs have more than artfully pled Count II.

Moreover, even a claim originating in state law may be one of the "special and small" category of cases with federal "arising under" jurisdiction. *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 699 (2006); *Evergreen Square of Cudahy v. Wisconsin Hous. & Econ. Dev. Auth.,* 776 F.3d 463, 465-66 (7th Cir. 2015). This is one such case. It necessarily raises a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing a congressionally approved balance of federal and state judicial responsibilities. *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg*., 545 U.S. 308, 314 (2005).

The central question is not, as the opening sentence of plaintiffs' brief asks, whether a PAC can ever be sued in state court. Of course it can, for claims like defamation, which involve conduct outside the PAC's contributions/expenditures. The cases cited at footnote 4 on page 14 of plaintiffs' brief so attest. However, where the substance of a claim, not its title or selectively artful

allegations, goes to the heart of FECA's governance and exclusive enforcement mechanism, which plaintiffs' Count II does, federal question jurisdiction is unassailable.

Count II simply cannot be decided without material substantive resort to FECA. If Count II is successful, which defendants deny, it will be because the court will determine that contributions to, and perhaps more importantly expenditures by, the PAC were in some manner improperly used for Bangstad's benefit. This would mean, for example, that the PAC's disbursements were not appropriate "expenditures" under FECA. Which means that FECA, which contains its own exclusive enforcement mechanism, would have been materially violated.

Plaintiffs acknowledge this possibility, almost relishing in it ("the fact that this litigation could reveal that the MBC Super PAC has violated federal law;" "Even if the end result of this lawsuit is that the MBC Super PAC implicates itself in various election law violations…," *Pl. Brief,* pp. 6, 7). They disingenuously ask, "We also query why Defendants seem to invite a complaint with the FEC. Perhaps in response Defendants will clarify which election law violation they are concerned they committed." *Pl. Brief*, p. 5 n. 4. Plaintiffs well know the answer (just as they know defendants deny violating FECA) lies in plaintiffs' own allegations within and underlying Count II.

What is plaintiffs' blithe response to the impact of a determination, made outside of FECA, of the legality of contributions/expenditures made under that federal statute? A simple "And what of it?" *Pl. Brief*, p. 6. What of it, indeed. FECA's extensive and exclusive statutory and administrative governing scheme would be overridden by a state court. Removal, however, exists to allow federal matters to be resolved in federal courts. Count II is a federal matter and remand should be rejected.

**THE COMPLAINT**

The complaint contains two counts: Count I, for invasion of privacy against Bangstad and the Company (but not the PAC), and Count II, for "alter ego" against all defendants.[1] Plaintiffs' motion to remand addresses defendants' claim that Count II raises a federal claim under 28 U.S.C. § 1331.

Plaintiffs' description of the complaint, and specifically Count II, is distorted, incomplete, and full of editorializations. For example, the recitation of the parties' long-resolved previous defamation litigation is irrelevant to both counts, but particularly Count II. Count II basically alleges, as relevant here, that the PAC is Bangstad's instrumentality and alter ego, and seeks to pierce the PAC's veil, with the eventual result being to allow plaintiffs to recover funds from the PAC to satisfy a potential judgment against Bangstad and/or the Company.

The complaint's allegations regarding the PAC generally fall into the following groupings: (1) soliciting of and contributions to the PAC, *Complaint*, ¶¶ 54, 59-62, 12-128; (2) disbursements from the PAC, ¶¶ 49, 53-56, 58, 143, 145, 147-48, 151-53, 155, 158; (3) the nature of such disbursements, ¶¶ 51-52, 63, 134-35, 143-44, 145-48, 151-52, 154, 156-59; and (4) the PAC's alleged role as Bangstad's alter ego and instrumentality, ¶¶ 137-42, 159-61, 163, 165.

The complaint's specific allegations against the PAC go to the heart of the PAC's financial activities, including its alleged expenditures. They include allegations that Bangstad used the PAC to fund what they characterize as personal legal expenses, including zoning disputes, defense to a defamation suit, personal and business bankruptcy counseling, *Complaint,* ¶ 51; Bangstad solicited funds through the PAC to fund his defamation lawsuit defense, ¶ 54; Bangstad routed defense and offense funds through the PAC, ¶¶ 57-58, 62; Bangstad did not use such funds for legal fees in a

---

[1]    Defendants refer the court to their motion to dismiss Count II, which has been stayed pending resolution of this motion.

defamation case but for other purposes, ¶ 63; Bangstad pays himself "consulting fees" with PAC funds, ¶ 135; the PAC is Bangstad's primary source of income, ¶¶ 137, 142; the PAC paid Bangstad's or his company's expenses, ¶¶ 143-47, 151-58; the PAC was used to help Bangstad "evade collection efforts by Walker in 2024", ¶ 161; and, based on the PAC's expenditure totals, the PAC's primary purpose is to provide a source of income to Bangstad and cover his debts to various law firms. ¶ 159.

The gist of these allegations is that the PAC accepted contributions from third parties and used those contributions to make improper expenditures for Bangstad's benefit and, elliptically, to somehow "hurt" plaintiffs. If true, which defendants deny, these allegations are inextricably intertwined with the PAC's compliance under FECA, including as to "expenditures" under 52 U.S.C. § 30101(17).[2]

## FECA

FECA is a comprehensive federal law governing the creation, maintenance and actions of political committees in federal elections. *See* 52 U.S.C. § 30101 *et. seq.* The PAC is an independent expenditure committee governed by the FEC. *See* 52 USC §§ 30101(4), (17); *SpeechNow.org v. FEC*, 599 F.3d 686, 696 (D.C. Cir. 2010) (en banc) (creating the category of independent expenditure-only committees now known as Super PACs). The FEC has the exclusive power to initiate or direct the initiation of proceedings to enforce FECA's requirements. 52 U.S.C. § 30107(a). FECA's enforcement mechanism as implemented by the FEC "shall be the *exclusive civil remedy for the enforcement of the provisions of this Act*." 52 U.S.C. § 30107(e) (titled "Exclusive civil remedy for enforcement") (emphasis supplied).

---

[2]     Defendants contend that all of the contributions to and expenditures from the PAC were and remain lawful and in compliance with FECA. A motion to remand, however, is not the forum for the recitation of the facts confirming that contention, and the discussion herein is not a waiver of such recitation and defenses at the appropriate time.

FECA's preemption provisions are discussed below.

## ARGUMENT

### I.    FEDERAL QUESTION JURISDICTION EXISTS.

A.  Plaintiffs Mischaracterize Count II.

Plaintiffs' overall argument is that, because they drafted their complaint to avoid any substantive reference to FECA's obligations and because plaintiffs deny bringing a claim under that statute, their complaint cannot be construed as raising or being intertwined with a federal claim. Plaintiffs' brief states, for example: "The MBC Super PAC was named not because it committed election law violations—though it may have—but rather because it is used as a vehicle by the other two Defendants to hide assets to allow them to engage in tortious behavior against the Plaintiffs." *Pl. Brief*, p. 5. And: "Plaintiffs' Complaint does not seek enforcement action regarding either of those two categories.  Walker and Holmes are not asserting a claim regarding the MBC Super PAC's failure to disclose its expenditures or contributions.  Rather, the Complaint includes the MBC Super PAC as a Defendant because it is used as a vehicle by the other two Defendants to funnel assets through by which to harm Walker and Holmes.  In short, the MBC Super PAC is named because it has assisted its co-defendants with committing private torts under state law."  *Pl. Brief*, p. 10.

The problem with this position, however, is that it ignores the actual allegations of plaintiffs' 169-allegation complaint. The complaint does not allege the PAC hid funds, but rather that it disbursed them for allegedly improper purposes. The complaint does not allege Bangstad or the Company "funneled assets" through the PAC; it alleges that the Company (and presumably Bangstad) made no contributions to the PAC. *Compl.*, ¶¶ 127-28. Similarly, the complaint does not allege the PAC "assisted its co-defendants with committing private torts under state law." It

alleges that the defendants *other than the PAC* committed statutory invasion of privacy wrongs

and the PAC expended third-party contributions in ways disapproved of by plaintiffs. Disapproval,

however, does not make a Super PAC's expenditures illegal; making distributions that are not

independent expenditures does. And that is determined by the FEC under FECA's exclusive

enforcement mechanism.

B.  Plaintiffs' Artful Pleading Cannot Erase Count II's Federal Claim.

Plaintiffs' brief plays on repeat that removal is governed by the four corners of their

complaint and that the complaint does not explicitly allege a federal claim. Plaintiffs, in fact, boast

that "the plaintiff is the proverbial 'master of his complaint.'" *Pl. Brief*, p. 5. If removal were

indeed governed only by the words plaintiffs choose to populate their complaint, plaintiffs could

easily avoid federal jurisdiction over an obviously federal claim. That, however, is not the law.

While the court reviews the face of a properly pleaded complaint to see whether a federal

question is present, a plaintiff cannot avoid a federal forum by "artfully pleading" what is actually

a federal claim solely in terms of state law. *Tifft,* 366 F.3d at 516*; Mitchell v. Pepsi-Cola Bottlers,*

*Inc.*, 772 F.2d 342, 344 (7th Cir. 1985), *cert. denied,* 475 U.S. 1047 (1986) (plaintiff may not avoid

federal question jurisdiction by artfully omitting to plead federal questions essential to right of

recovery); *Commonwealth Edison Co. v. International Broth. of Elec. Workers*, 961 F.Supp. 1154,

1160 (N.D. Ill. 1996), *abrogated on other grounds, Wisconsin Dept. of Corrections v. Schacht*,

524 U.S. 381, 386 (1998) (plaintiff may not avoid a federal forum by drafting an essentially federal

claim in terms of state law).

As the court reasoned in *Bolssen v. Unum Life Ins. Co. of Am.,* 629 F. Supp. 2d 878, 882

(E.D. Wis. 2009):

> Bolssen asserts that neither the complaint nor the plan attached to it
> make it clear that the plan covers workers performing primarily
> commercial activities. But a plaintiff cannot avoid complete

7

preemption under ERISA by "artfully pleading ... so as to omit facts that indicate federal jurisdiction." *Jass v. Prudential Health Care Plan, Inc.,* 88 F.3d 1482, 1488 (7th Cir.1996) (citation omitted). To allow defendants access to federal court when the actual nature of the complaint is federal, courts may look beyond the four corners of the complaint and matters attached thereto "to determine whether a plaintiff has artfully pleaded his suit so as to couch a federal claim in terms of state law." *Id.* (quoting *Burda v. M. Ecker Co.,* 954 F.2d 434, 438 (7th Cir.1992)). Based upon the plan itself, which is attached to the complaint, as well as the evidence Unum has submitted in response to Bolssen's motion to remand, it is clear that the plan covers all Oneida employees, including those employed by its business enterprises, such as its casino. (Compl., Ex. A; Aff. of Kathleen Reid, Exs. A, B.)

Here, plaintiffs are trying to "couch a federal claim" in terms of Wisconsin's alter ego/piercing law. Plaintiffs apparently want access to the PAC's assets to secure the payment of a potential state law judgment against the other defendants. If plaintiffs get their wish, they will perform an end-run around the federally registered PAC's federal governing body (the FEC). After all, plaintiffs primarily challenge the propriety of the PAC's expenditures. That, however, is the domain of FECA and enforced by the FEC. Federal questions abound.

C.  The Embedded Federal Question Doctrine Applies.

In addition to the artful pleading doctrine, the courts have recognized that an essential federal question may be embedded in a complaint that does not overtly reference federal law. Even a claim originating in state law may be one of the "special and small category "of cases that possess federal "arising under" jurisdiction. *Evergreen,* 776 F.3d at 465-66. *See also Grable,* 545 U.S. 308; *See Empire  Healthchoice Assur., Inc.,* 547 U.S. at 699. As *Grable* explained:

> There is, however, another longstanding, if less frequently encountered, variety of federal "arising under" jurisdiction, this Court having recognized for nearly 100 years that in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues. *E.g., Hopkins v. Walker,* 244 U.S. 486, 490-491, 37 S.Ct. 711, 61 L.Ed. 1270 (1917). The doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn

on substantial questions of federal law, and thus justify resort to the
experience, solicitude, and hope of uniformity that a federal forum
offers on federal issues, see ALI, Study of the Division of
Jurisdiction Between State and Federal Courts 164-166 (1968).

545 U.S. at 312. The question is whether a state-law claim necessarily raises a stated federal issue,

actually disputed and substantial, which a federal forum may entertain without disturbing any

congressionally approved balance of federal and state judicial responsibilities. *Id.* at 314. *See also*

*Evergreen*, 776 F.3d at 466.

This case is a member of that special category of federal jurisdiction cases, especially since

the propriety of the PAC's conduct depends on its compliance with the very federal law that the

complaint refuses to acknowledge. *See, in this regard, Evergreen,* 776 F.3d 463 (landlord's action

against state housing authority yielded federal jurisdiction, where complaint alleged that state

authority breached housing assistance contract by failing to approve annual rent increases, which

violated federal housing statute); *Mitchell,* 772 F.2d 342 (state wrongful termination claim,

alleging that union employee was forced to resign, was removable because it raised a claim under

a collective bargaining agreement governed by the federal Labor Management Relations Act);

*NewPage Wisconsin Sys. Inc. v. United Steel, Paper & Forestry, Rubber, Mfg., Energy Allied*

*Indus. & Serv. Workers Int'l Union, AFL-CIO/CLC,* 651 F.3d 775 (7th Cir. 2011) (employer's

declaratory judgment action against union regarding cost savings measures was removable as

requiring court to construe and apply ERISA to collective bargaining agreement).

In this regard, plaintiffs' brief confuses the issues in stating: "Because the FEC is not

equipped to handle claims relating to invasion of privacy or the alter ego doctrine, it does not have

exclusive jurisdiction over this case." *Pl. Brief*, pp. 14-15. Defendants do not contend the FEC

should "handle" the plaintiffs' invasion of privacy claim (Count I), for which the PAC is not even

a defendant. Plaintiffs know this, of course. Their statement's reference to the invasion of privacy

9

claim at all confirms they included the PAC as a defendant not for substantive reasons but as a potential collection vehicle for that unproven claim.

Defendants do contend, however, that a determination of the propriety of the PAC's challenged expenditures will be a necessary element for plaintiffs to prove their alter ego claim and that such determination is subject to the FEC's exclusive jurisdiction under FECA. While the complaint generally uses the terms "instrumentalities," "control," and "alter ego," its specific allegations primarily criticize the PAC's payments. And though the complaint alleges Bangstad is the PAC's treasurer, it does not, for example, specifically allege the merging of records or accounts; the undercapitalization of Bangstad or the Company and, if so, a direct link to an overcapitalization of the PAC (which does not exist); or even the payment by Bangstad or the Company of funds to the PAC, much less for any improper purpose. The complaint basically alleges the PAC spent its contributions to or for the benefit of Bangstad or the Company—i.e., that its expenditures were not allowable under FECA.

## II.    FECA IS THE EXCLUSIVE ENFORCEMENT MECHANISM AND PREEMPTS COUNT II.

Count II does not involve conflict preemption. It does, however, involve field preemption, to the extent plaintiffs' claims invoke FECA's governance of contributions to and disbursements from an independent expenditure committee such as the PAC. It further involves express preemption by virtue of its statutory exclusive enforcement mechanism and its substantive preemption provisions.

### A.    FECA's Exclusive Enforcement Mechanism.

The FEC has the exclusive power to initiate or direct the initiation of proceedings to enforce FECA's requirements. 52 U.S.C. § 30107(a). FECA's enforcement mechanism as implemented by the FEC, "shall be the *exclusive civil remedy for the enforcement of the provisions of this Act*." 52

U.S.C. § 30107(e) (titled "Exclusive civil remedy for enforcement") (emphasis supplied).

One believing a FECA violation has occurred may file a complaint with the FEC. 52 U.S.C. § 30109(a)(1). If the FEC determines by an affirmative vote of four that "it has reason to believe that a person[3] has committed, or is about to commit, a violation of this Act…," it will investigate. § 30109(a)(2). If it determines probable cause exists it will attempt informally to correct or prevent such violation and to enter into a conciliation agreement with any person involved. § 30109(a)(4)(A)(i). Unless violated, such agreement will bar any FEC action, including a civil proceeding. *Id.,* §§ 30109(a)(5)(A), (B).

If the FEC believes that a conciliation agreement has been violated, or if the FEC is unable to otherwise correct or prevent a FECA violation, it (not anyone else) may file a civil action for relief. §§ 30109(a)(5)(D), (6)(A). Remedies include injunctive relief, appropriate orders, and civil penalties. §§ 30109(a)(6)(A)-(C). *See also* 11 CFR Part 111, titled "Compliance Procedures. (52 U.S.C. §§ 3107(a), 3109)." Part 111 is extensive, containing 24 procedural sections, 15 Q&A sections, and six collections.

A private *petition* can be filed only if and after (1) the party files a complaint with the FEC and the FEC orders the complaint dismissed; or (2) the party files a complaint with the FEC and the FEC does not act on it within 120 days. A private *civil lawsuit* can be filed only if and after (3) the court declares the FEC's administrative dismissal of the complaint or its failure to act to be contrary to law, presumably after the petition is filed, and the FEC fails to conform to the court's declaration within 30 days. 52 U.S.C. §§ 30109(a)(8)(A), (C).

---

[3]    "Person" includes an individual, committee, partnership, corporation, or other organization or group of persons. *See* 52 U.S.C. § 30101(11).

In addition to injunctive relief, FECA authorizes penalties for its violation. 52 U.S.C. § 3109(d), 11 C.F.R. § 111.24. These penalties, including civil penalties tied to and yielding potential multiples of the amounts of erroneous contributions and expenditures, are materially different than the relief sought by plaintiffs. Plaintiffs seek the disregard of the PAC as an entity, and the eventual obtaining of its assets to pay for any judgment against the other defendants under Count 1.

If, as the complaint's allegations confirm, plaintiffs challenge the PAC's use of contributions to it to make expenditures plaintiffs view as inappropriate, their initial remedy must be through an administrative complaint with the FEC. If the FEC does not timely act, refuses to proceed, or rules against the plaintiffs, and if the court finds the FEC's actions contrary to law, and if the FEC fails to remedy its errors, then and only then can plaintiffs bring a civil action for FECA violations. Plaintiffs cannot twist this comprehensive regulatory mechanism into submission by artfully pleading an alter ego/piercing remedy.

B.   FECA's Preemption.

FECA's primary preemption provision is 52 U.S.C. § 31043(a), which states:

> Subject to subsection (b) [regarding state or local political party committees and for purchase or construction of an office building], the provisions of this Act, and of rules prescribed under this Act, supersede and preempt any provision of State law with respect to election to Federal Office.

11 C.F.R. § 108.7(a) reaffirms that FECA and its rules "supersede and preempt any provision of State law with respect to election to Federal office." 11 C.F.R. § 108.7(b) highlights federal law's primacy concerning (1) the organization and registration of political committees supporting federal candidates; (2) the disclosure of receipts and expenditures by federal candidates and political committees; and (3) the limitation on contributions and expenditures regarding federal candidates and political committees.

11 C.F.R. § 108.7(c) lists the few state law matters which are not preempted: those providing for (1) the manner of qualifying as a candidate or political party organization; (2) dates and places of elections; (3) voter registration; (4) prohibition of false registration, voting fraud, theft of ballots, and similar offenses; (5) candidates' personal financial disclosures; or (6) application of state law to funds used for the purchase of or to construct a state or local party office building to a certain extent. With the exception of (5) and (6), which are irrelevant here, all of the listed matters involve election procedures which are and have historically been governed by state law.

Central to plaintiffs' alter ego claim against the PAC is whether the PAC has properly operated, including as to its disbursements. Plaintiffs claim the PAC obtained contributions and then used the PAC's expenditures for the personal benefit of Bangstad and "his companies." In other words, plaintiffs claim that the PAC's expenditures are not proper "independent expenditures" under 52 U.S.C. § 30101(17). *See also* § 30101(9) as to expenditures.

To challenge them, plaintiffs must file a complaint with the FEC under 52 U.S.C. § 30109's exclusive enforcement mechanism. *See Tifft,* 366 F.3d 513 (federal labor statute preempted former employees' claim for wrongful termination under state statute, where employees' rights were not independent of collective bargaining and related agreements, and agreements had to be construed to determine whether they properly embodied the state law's terms and whether utility complied with them); *England v. Thermo Prods., Inc.,* 956 F. Supp. 1446 (N.D. Ind. 1996) (employee's state claim against employer for negligent failure to disclose x-ray results showing early indications of cancer was preempted by federal labor statute, as any duty of employer was inextricably intertwined with collective bargaining agreement); *Commonwealth Edison Co. v. International Broth. of Elec. Workers, Loc. Union No. 15,* 961 F. Supp. 1154 (N.D. Ill. 1996) (federal labor

statute preempted union's state law claims against employer, employer's successor, and state commerce commission alleging asset sale agreement violated the state statute regarding successor employers; claim would at least initially require court to interpret collective bargaining agreement to determine whether it contained a "successor clause" under the state statute).

FECA's preemption provisions reaffirm its exclusive enforcement mechanism. Plaintiffs' allegations invoke 11 C.F.R. § 108.7(a)'s general preemption provision, 11 C.F.R. § 108.7(b)(3)'s preemption of state laws concerning contribution and expenditure limits and, to the extent plaintiffs question the PAC's disclosure of receipts and expenditures, 11 C.F.R. § 108.7(b)(2). None of the exceptions to preemption under 11 C.F.R. § 108.7(c) apply or have anything to do with any allegation of the complaint.

Most of the cases cited by plaintiffs in support of their preemption argument are discussed in (C) below. However, two cases addressing the pre-checked recurring donations by conduit company WinRed, Inc. highlight the justification for this case's preemption, not remand. The courts in *WinRed v. Ellison,* 54 F.4th 934 (8th Cir. 2023) and *Seagull v. WinRed, Inc.,* 2023 WL 4322714 (Conn. Super. June 28, 2023) (relying on *Ellison*) both held that 52 U.S.C. § 30143(a) and 11 C.F.R. § 108.7(c) excepted from preemption the legality of the use of pre-checked renewal boxes under state consumer protection laws. Section 108.7(c)(4) provides that FECA "does not supersede State laws which provide for the …(4) Prohibition of false registration, voting fraud, theft of ballots, and similar offenses." The courts held that the pre-checked boxes constituted "similar offenses" related to voting rights under the regulation. In contrast to these cases, no similar exception exists here.

In this regard and as part of their preemption argument, plaintiffs mischaracterize *Int'l Fin. Servs. Corp. v. Chromas Techs. Canada, Inc.*, 356 F.3d 731 (7th Cir. 2004) as standing for the

proposition that "(e)quitable claims rooted in the alter ego doctrine or piercing the corporate veil are substantive causes of action rooted in state law." *Pl. Brief*, p. 6. The court actually discussed the doctrine not as a separate claim from the complaint's breach of contract claim but as a *remedy*, with the question being whether a judge or jury should resolve the dispute. *Id.* at 736 (when "deciding," "considering," "whether a remedy is equitable or legal…," "Although we conclude that, under Illinois law, piercing the corporate veil is an equitable remedy to be determined by the court…."). As the *Chromas* court recognized, alter ego/piercing is a remedy, not a "substantive caus(e) of action." *Webber v. Armslist LLC*, 70 F.4th 945, 967 n. 8 (7th Cir. 2023), *reh'g and reh'g en banc denied,* 2023 WL 4533935 (7th Cir. 2023) ("A request to pierce the corporate veil is not an independent cause of action under Wisconsin and Pennsylvania law."); *Eberts v. Torte and Svetlana Goderstad*, 2008 WL 123594, *1, (E.D. Wis. January 10, 2008).

C.  Plaintiffs' Alter Ego Claim Is Uniquely Different Than Their Brief's Irrelevant And Purely State Law Cases, None Of Which Even Addresses Federal Question Jurisdiction.

Defendants agree with plaintiffs that not every state law claim that might potentially brush against a federal matter raises a federal question under 28 U.S.C. § 1331. That, however, is not the end of the analysis, especially here, where Count II bashes into federal law with a sledgehammer.

The authorities cited in plaintiffs' brief do not support a contrary conclusion. Plaintiffs, for example, cite several cases in which state law claims such as defamation and slander proceeded against PACs without discussion. *See, for example, Pl. Brief*, p. 14. None of these cases, however, addressed federal question jurisdiction[4] or FECA. *See Moore v. Cecil,* 109 F.4th 1352 (11th Cir. 2024); *Grayson v. No Labels, Inc.,* 2022 WL 12144181 (11th Cir. 2022); *Schatz v. Republican State Leadership Committee*, 777 F.Supp. 2d 181 (D. Maine 2011); *Bell v. Nat'l Republican Cong.*

_____

[4]    *Pritt v. Republican Nat'l Comm.*, 1 F. Supp. 2d 590 (S.D. W. Va. 1998) involved a fraudulent joinder issue under diversity jurisdiction.

*Comm.*, 17 F. Supp. 2d 605 (S.D. W. Va. 2002); and *Pritt v. Republican Nat'l Comm.*, 1 F. Supp. 2d 590 (S.D. W. Va. 1998). One citation is only to a state law complaint, not a court decision, much less one as to federal jurisdiction. *McMullin for Utah, Inc. v. Club for Growth Action, et al.*, 2022 WL 5025084 (Utah Dist. Ct. Oct. 4, 2022).

In addition, plaintiffs do not claim that any defendant committed defamation, slander, or similar torts, and no such words appear in the complaint. These torts address false statements made by one party against another and similar conduct. Such statements are outside of the organization, operations, or affairs of the entity. They certainly do not involve whether, for example, expenditures comply with federal law or otherwise impact election laws (aside from the fact that the speaker/writer may be a Super PAC).

The same is true regarding some of the above cases' (including the *WinRed* cases) references to state consumer protection statutes, which generally involve misrepresentations made in advertisements or similar communications. Count II does not allege any such claims, but rather broadly assails the expenditures by the Super PAC and claims the entity is being wrongfully used to benefit Bangstad.

Perhaps to appear timely, plaintiffs cite two recent proceedings involving Elon Musk and America PAC, neither of which supports remanding this case. The first is a Dane County, Wisconsin complaint challenging Musk's recent million dollar give-a-way. *Kaul v. Musk,* 2025CV001017. That case involved the recent election for the Wisconsin Supreme Court and allegations that the defendants violated Wisconsin's election law prohibitions on electioneering, which fall squarely within the category of excepted in 11 C.F.R. § 108.7(c)(4) (FECA does not supersede state laws prohibiting "voter fraud" or similar offenses.)[5]  The complaint against Musk,

---

[5]     Plaintiffs' citation to *Republican Governors Association v. Bell,* 421 S.W.3d 42 (2013), similarly involved a state governor's race which did not implicate federal election law.

in any event, was dismissed three days after its filing. The second primarily involved Musk's and

the PAC's 2024 program to enter voters providing personal identifying information into a random

drawing to win $1 million. *Commonwealth of Pennsylvania v. America PAC,* Court of Common

Pleas of Philadelphia County, 241-5617. That complaint alleged public nuisance and consumer

protection violations principally based on the program's illegal lottery status. It was dismissed less

than one month after its filing.

Count II is inherently and materially different than the traditional state law claims cited by

plaintiffs because it does not involve issues outside of and extraneous to FECA.  Essential to its

determination is the consideration of the PAC's inner workings, including what funds did not go

into it (the complaint alleges no contributions by Bangstad or the Company) and what funds went

out of it. And FECA, including through its definition of "independent expenditure," governs those

matters.

### III.   PLAINTIFFS ARE NOT ENTITLED TO COSTS OR EXPENSES, INCLUDING ATTORNEY'S FEES

Because defendants properly removed this action, plaintiffs' request for costs and

attorney's fees is moot. Even if that were not the case, a clearly objective basis exists for removal

such that costs and fees are not warranted.

28 U.S.C. § 1447(c) authorizes but does not require the court to award "just costs" and

expenses, including fees.   Absent unusual circumstances, attorney's fees should not be awarded

when the removing party has an objectively reasonable basis for removal. *Martin v. Franklin*

*Capital Corp.,* 546 U.S. 132, 141 (2005); *Wells Fargo Bank, N.A. v. Younan Props., Inc.*, 737 F.3d

465, 469 (7th Cir. 2013).  As the court stated in *Sebring v. Milwaukee Pub. Sch.,* 569 F. Supp. 3d

767, 781 (E.D. Wis. 2021):

> The Seventh Circuit has held that, "[a]s a general rule, if, at the time
> the defendant filed his notice in federal court, clearly established law

demonstrated that he had no basis for removal, then a district court should award a plaintiff his attorneys' fees." *Lott v. Pfizer, Inc.*, 492 F.3d 789, 793 (7th Cir. 2007). By contrast, "if clearly established law did not foreclose a defendant's basis for removal, then a district court should not award attorneys' fees." Under this standard, sanctions may be awarded when removal is clearly improper, but not necessarily frivolous. *Jackson County Bank v. DuSablon*, 915 F.3d 422, 424 (7th Cir. 2019).

Here, removal was neither clearly improper nor frivolous. Defendants have more than an objectively reasonable basis to remove this action. The federal statutes and the courts support the removal of Count II (which really seeks a remedy as opposed to stating a claim), based on the complaint's scores of allegations challenging the propriety of the PAC's conduct, including its disbursements. Even if the court disagrees that removal is appropriate, defendants have made more than a reasonable argument, based on multiple applicable authorities and analyses, supporting this court's jurisdiction.

## CONCLUSION

Defendants respectfully request that the court deny plaintiffs' motion to remand.

Dated this 5th day of May, 2025.

FOX, O'NEILL & SHANNON, S.C.
Attorneys for Defendants

*/s/ Electronically signed by Matthew W. O'Neill*
By:_____
MATTHEW W. O'NEILL
State Bar No. 1019269

P.O. Address:
622 N. Water Street, Suite 500
Milwaukee, WI 53202
Phone: (414) 273-3939
Email: mwoneill@foslaw.com