UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

GREGG WALKER and
HEATHER HOLMES,

          Plaintiffs,

          v.

KIRK BANGSTAD,
MINOCQUA BREWING COMPANY LLC, and
MINOCQUA BREWING COMPANY SUPER PAC,

          Defendants.

Case No. 3:25-cv-00214

**DEFENDANTS' BRIEF IN OPPOSITION TO
PLAINTIFFS' MOTION TO AMEND THE COMPLAINT AND
CONTINUED OPPOSITION TO PLAINTIFFS' MOTION TO REMAND**

## INTRODUCTION

Plaintiffs claim that remand of this case will be mandated if the Court grants their motion for leave to amend the complaint. According to plaintiffs, the proposed amended complaint ("Proposed AC") does three things: (1) amends Count I (invasion of privacy) "such that it is pled against all three Defendants"; (2) drops Count II (alter ego) entirely; and (3) "moves" the allegations concerning the three defendants constituting a single entity "to the background facts section." *Motion* (ECF No. 24), ¶ 7.

If plaintiffs had simply amended the Complaint to eliminate Count II and its claims against the Minocqua Brewing Company Super PAC ("PAC"), they would be correct that only a state law claim would remain, and remand would be appropriate. Plaintiffs, however, are attempting to keep the same core allegations against the PAC under the guise of a state law claim. As to the PAC, the Proposed AC asserts the same allegations, raises the same federal questions, and seeks the same

relief as the original complaint  These allegations are intertwined with and subject to, and could only be resolved through, the exclusive enforcement mechanism and administrative procedures of the Federal Election Commission Act ("FECA") and the Federal Elections Commission (FEC). That confirms federal jurisdiction.

A pleading's substance governs, not its form. *Birch v. Kim,* 977 F. Supp. 926, 936 (S.D. Ind. 1997), quoting 5 Wright & Miller, *Federal Practice and Procedure* § 1286 at 553-55 (2d ed. 1990).  It does not matter that plaintiffs tinkered with their pleading to relegate their alter ego allegations to the background. The Proposed AC still seeks to hold the PAC financially liable for the other defendants' alleged wrongs, based overwhelmingly on PAC disbursements that are subject to and must be challenged under federal law. The court need not allow a complaint to be amended when the amendment is an artful if artificial attempt to obtain remand.

In addition to denying plaintiffs' motion to amend based on the court's federal jurisdiction, the court should deny the motion because the Proposed AC does not state a viable invasion of privacy claim against the PAC.  The Proposed AC does not allege that the PAC itself took any specific action regarding the images at issue in that claim. Instead, it attempts to recast a newsletter penned by Kirk Bangstad and sent out on behalf of the Minocqua Brewing Company ("Company") as an "MBC Super PAC newsletter," and alleges the newsletter was sent to the PAC's "listserv" and "subscribers." These and other general and generalized allegations confirm that no plausible theory of recovery for invasion of privacy by the PAC is stated as required under *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007) or *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

For conciseness, defendants here do not repeat in detail their arguments in Defendants' Brief Opposing Motion to Remand (ECF No. 20). Those arguments, however, are as relevant to the Proposed AC as they are to the original complaint, and defendants refer the court to them.

## **PROPOSED AMENDED COMPLAINT**

The Proposed AC makes only one material substantive change to the original complaint. It drops the formal alter ego (piercing) claim and attempts to include the PAC in its remaining invasion of privacy claim. The Proposed AC's invasion of privacy claim is (and the original complaint was) grounded on certain images allegedly placed on the Company's Facebook page and on the product "Snowflake Holiday Ale." The Proposed AC alleges these images were included in and posted on the Company's Facebook page and in its newsletters. *See Proposed AC* (ECF No. 24-1), ¶¶ 84, 87, 92-94, 161-163, 166, and Exhs. 22, 27-29 (filed with ECF No. 1-2).[1]

The Proposed AC does not allege that the PAC created the newsletters in which the images appeared. Rather, it alleges Bangstad created the images, but complains that Bangstad distributed the images through "the MBC Super PAC weekly newsletter" and through a "listserv" connected to the PAC. *See Proposed AC* (ECF No. 24-1), ¶¶ 82, 87. However, the newsletters indicate on their face that they were and are issued by the Company. They are headed "Minocqua Brewing Company." *See* Exhs. 21, 24 (ECF No. 1-2, pp. 255-260, 264-267).  As the Proposed AC acknowledges (¶ 149), the only reference to the PAC is under Bangstad's printed signature line, which lists Bangstad as owner of the Company and founder of the PAC. *See, for example, id.* The Proposed AC refers to Bangstad, not the PAC, as the author and poster and refers to the publications as "his." *See* ¶¶ 78, 93, 149, 163. The Proposed AC further alleges that the newsletter is sent to the Company and the PAC listservs' subscribers. ¶¶ 87, 93, 95, 150, Exh. 24.

The Proposed AC's only other substantive additions are allegations that: (1) Bangstad, in the newsletters and the Company's Facebook page, promoted the Company and solicited donations to the PAC, ¶ 151; (2) the PAC's website limits entrance to those 21 and over, contains a purported

---

[1]   The Proposed AC retains all the exhibits from the original complaint. *See Plaintiff's Motion to File an Amended Complaint and Supplemental Motion on Remand* (ECF No.24), ¶ 12.

map of the Company's territory, and links to the Company's products, ¶¶ 152, 153; and (3) the Company and the PAC's "logos" are similar, ¶ 154. These allegations add nothing to the core elements required to state a claim for invasion of privacy against the PAC.

Importantly, the Proposed AC, with the above few additions, rolls *all* of the original complaint's allegations, including its alter ego allegations, into one huge claim which seeks the same relief against all defendants. While the Proposed AC removes the original complaint's formal and separate Count II (alter ego), it retains the substance of that claim by repleading virtually all of the original complaint's substantive piercing allegations.

The Proposed AC, for example (1) alleges in a heading that "Bangstad, Minocqua Brewing, and the Super PAC Constitute a Single Entity," and reiterates the alter ego allegations at ¶¶ 109-148, 156-159; and (2) contains a request for "(a) declaration that Defendants are alter egos of one another," Wherefore Clause, No. 2.

The Proposed AC also continues to allege the same matters regarding the PAC's FEC registration and filings, ¶¶ 5, 48, 17, 126; the same payments made by the PAC, including from 2021-2024, ¶¶ 48-55, 125, 127-33, 135-38, 141-43, 145, 148, 155; the same solicitation, raising, and routing of funds through the PAC, including images of donation pages, ¶¶ 56-58, 62, 151; and the same allegations regarding Bangstad's "Obfuscating the Financial Support He Receives from the" PAC, ¶¶ 64-77.

## ARGUMENT

### I.     THE COURT SHOULD REJECT THE PROPOSED AMENDED COMPLAINT.

The resolution of a motion to file an amended complaint is within the court's discretion. *Brunt v. Serv. Employees Int'l Union,* 284 F.3d 715, 720 (7th Cir. 2002). Despite Rule 15(a)(2)'s provision that leave to amend should be "freely" given when "justice so requires," leave to amend is inappropriate where, among other things, there is bad faith or the amendment is futile. *Foman*

4

*v. Davis,* 371 U.S. 178, 181 (1962); *Perrian v. O'Grady,* 958 F.2d 192, 194 (7th Cir. 1992). Here, the Proposed AC continues to invoke federal question jurisdiction and is futile.

### A. The Proposed Amended Complaint Does Not Erase Federal Question Jurisdiction.

Federal Rule of Civil Procedure 8(f) requires that pleadings be construed to do substantial justice. Particularly in this context, a claim should be construed according to its substance, not its form or label. *Birch,* 977 F. Supp. at 936 (quotation omitted). Moreover, it is futile to allow an amendment that restates the same allegations as the existing pleading using different language. *Garcia v. City of Chicago, Ill.,* 24 F.3d 966, 970 (7th Cir. 1994), *cert. denied*, 514 U.S. 1003 (1995). Here, allowing the Proposed AC would be futile because federal jurisdiction would remain.

Except for the PAC's inclusion as a defendant in the Proposed AC's invasion of privacy claim, the Proposed AC's substance is basically the same as the original complaint. Even so, plaintiffs' basic argument is that the "removal" of the initial complaint's formal Count II mandates remand under *Royal Canin U.S.A. v. Wullschleger,* 604 U.S. 22 (2025). Plaintiffs' argument, however, begs the question.

*Royal Canin* generally holds that when, after removal, an amended complaint is filed that deletes the only prior-filed federal claim, remand is appropriate because the court no longer has supplemental jurisdiction to decide the remaining state law claim(s). But here, the Proposed AC does not drop the federal FECA claim. It just moves it within the invasion of privacy claim, with all the same allegations challenging the PAC's structure and actions described as "background."

As described in Defendants' Brief Opposing Plaintiffs' Motion to Remand (ECF No. 20), plaintiffs cannot avoid this federal forum by "artfully pleading" what is actually a federal claim solely in terms of state law. *Tifft v. Commonwealth Edison Co.,* 366 F.3d 513, 516 (7th Cir. 2004);

*Mitchell v. Pepsi-Cola Bottlers, Inc.*, 772 F.2d 342, 344 (7th Cir. 1985), *cert. denied,* 475 U.S. 1047 (1986); *Bolssen v. Unum Life Ins. Co. of Am.,* 629 F. Supp. 2d 878, 882 (E.D. Wis. 2009): *Commonwealth Edison Co. v. Int'l Brotherhood of Elec. Workers*, 961 F.Supp. 1154, 1160 (N.D. Ill. 1996), *abrogated on other grounds, Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 386 (1998). Artful pleading is what the initial complaint, and now the Proposed AC, constitute. Count II (alter ego) supported federal jurisdiction because the allegations underlying and supporting it, including those challenging the PAC's expenditures, were subject to FECA. All of those allegations remain in the Proposed AC. Deleting Count II's heading doesn't change that.

Plaintiffs might have a credible argument if, and only if, the Proposed AC removed all alter ego allegations against the PAC, and all allegations regarding the PAC's registration, filings, solicitations and expenditures. Plaintiffs, however, did not do this. The Proposed AC still alleges and seeks a declaration that the PAC is Bangstad's and the Company's alter ego. On what basis? On the scores of allegations regarding the PAC, including its filings, expenditures, expenditures' recipients, and their relation to Bangstad. In other words, plaintiffs' continued challenge to the propriety of the federally registered PAC's operations.[2]

These allegations, after all, have nothing to do with the statutory invasion of privacy claim. Their only relevance is to the Proposed AC's continued improper piercing allegations. As described in Defendants' Brief Opposing Plaintiffs' Motion to Remand, plaintiffs' challenges to the PAC's operations and disbursements fall under the exclusive purview and exclusive enforcement mechanism of the FEC under FECA.

The PAC could only be an alter ego of a defendant if, as relevant here, a court determines that its disbursements were wrongly used—that is, if the PAC's expenditures did not comply with

---

[2] Both complaints' minute details as to the PAC's alleged expenditures contrast starkly with the Proposed AC's vague and generic new allegations against the PAC in its invasion of privacy claim.

and are not appropriate under FECA. That, however, would violate FECA's exclusive enforcement mechanism. Because plaintiffs' right to an alter ego remedy against the PAC necessarily depends on resolution of a substantial question of federal law, jurisdiction exists under 28 U.S.C. § 1331. *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.,* 463 U.S. 1, 27-28 (1983). *See also Empire HealthChoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006) (claim originating in state law may be in the "special and small" category of cases with federal "arising under" jurisdiction); *Evergreen Square of Cudahy v. Wisconsin Hous. & Econ. Dev. Auth.,* 776 F.3d 463, 465-66 (7th Cir. 2015) (same).

The federal issue here is certainly disputed and substantial and can be resolved in this federal forum without disturbing a congressionally approved balance of federal and state judicial responsibilities. *Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). Indeed, the PAC is an independent expenditure committee governed by the FEC under FECA's comprehensive federal law covering the creation, maintenance and conduct of political committees. *See* 52 U.S.C. § 30101 *et. seq.*; 52 USC §§ 30101(4), (17). The FEC has the exclusive power to initiate or direct the initiation of proceedings to enforce FECA's requirements, and the FEC's implementation of FECA's enforcement mechanism "shall be the exclusive civil remedy for the enforcement of the provisions of this Act." 52 U.S.C. § 30107(a), (e).

The Proposed AC, similar to the initial complaint, contains at least 31 allegations challenging allegedly improper PAC expenditures. *See* ¶¶ 49-55, 63, 68, 125-148. The real-life import of these allegations is an overall allegation that the PAC's disbursements are not "independent expenditures" under 52 U.S.C. § 30101(17). *See also* 52 U.S.C. § 30101(9) as to expenditures.

Plaintiffs' "exclusive" remedy for these challenges is through an administrative complaint filed with the FEC, or eventually a civil complaint for FECA violations. A civil complaint could be brought if and only if plaintiffs first file an administrative complaint with the FEC, the FEC orders the complaint dismissed or does not act on it within 120 days; plaintiffs then file a private enforcement petition; the court declares the FEC's administrative dismissal or failure to act to be contrary to law; and then, the FEC fails to conform to the court's declaration within 30 days. 52 U.S.C. § 30109, 11 CFR Part 111.

As described in Defendants' Brief Opposing Plaintiffs' Motion to Remand (ECF No. 20), these exclusive enforcement provisions are consistent with FECA's preemption. *See also* 52 U.S.C. § 30109, 11 C.F.R. § 108.7; *Tifft,* 366 F.3d 513 (federal labor statute preempted former employees' wrongful termination claim under state statute); *England v. Thermo Prods., Inc.,* 956 F. Supp. 1446 (N.D. Ind. 1996) (federal labor statute preempted state claim for negligent failure to disclose x-ray results showing early indications of cancer); *Commonwealth Edison Co.,* 961 F. Supp. At 1163-64 (federal labor statute preempted union's state law claims that asset sale agreement violated state successorship statute).

Plaintiffs' brief cites *Oneida County v. Bangstad,* 25-cv-520-jdp, 2005 WL 2026314, *2 (W.D. Wis. July 1, 2025), for the proposition that federal jurisdiction cannot be created by defenses, including constitutional ones. There, defendant raised as a *defense* the federal unconstitutionality of local permitting ordinances which the County sought to enforce. Here, plaintiffs' allegations themselves, which affirmatively challenge the propriety of the PAC's expenditures, invoke federal jurisdiction.

Plaintiffs could make this case a truly "state" case if they proposed an amended complaint removing the alter ego claim and removing the PAC as a defendant. Instead, they simply

8

rearranged the deck chairs, dropping a claim heading and adding the PAC to the statutory privacy claim based on the same underlying allegations of violation of federal law.

### B. Adding the PAC to the Invasion of Privacy Claim Would be Futile, as the PAC Was Not a Creator or Publisher of the Alleged Statements.

An amendment is futile if it would not survive a motion to dismiss, *Garcia,* 24 F.3d at 970, or state a valid theory of liability, *Bower v. Jones*, 978 F.2d 1004, 1008 (7th Cir. 1992). This is akin to a Rule 12(b)(6) analysis.

A complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." *Twombly,* 550 U.S. at 570. A claim must include "enough facts to state a claim to relief that is plausible on its face." *Ton Services, Inc. v. Qwest Corp.,* 493 F.3d 1225, 1236 (10th Cir. 2007). A claim has facial plausibility when it pleads factual content allowing the court to draw the reasonable inference that a defendant is liable for the alleged misconduct. *Iqbal,* 556 U.S. at 678. The plausibility standard calls for a "context-specific" inquiry that requires the court "to draw on its judicial experience and common sense." *Id.* at 679. (quotation omitted).

Moreover, "(a) pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do. Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (quotation omitted). Where a claim pleads allegations "merely consistent with" liability, it stops short of the "line between possibility and plausibility of 'entitlement to relief.'" *Id.*

Wisconsin's invasion of privacy law, Wis. Stat. § 995.50, creates liability only for the persons who actually make the disclosure for improper purposes. *See Olson v. Red Cedar Clinic*, 2004 WI App 102, ¶ 8, 273 Wis. 2d 728, 732, 681 N.W.2d 306. Section 995.50(2)(am)2, the basis for plaintiffs' claim, applies to a person who uses, "for advertising purposes or for purposes of

trade," the name or picture of a person without permission. The original complaint limited the claim to Bangstad and the Company, alleging they used plaintiffs' likenesses to advance the business and sell product.

The Proposed AC tries to add the PAC as a defendant to the invasion of privacy claim by artificially recasting the newsletter described in the original complaint as *Bangstad's* "weekly 'newsletter' to his supporters," *Complaint* (ECF No. 1-2), ¶ 86, as "the MBC Super PAC weekly newsletter." *Proposed AC* (ECF No. 24-1), ¶¶ 82, 161. However, the "newsletters" in question show on their face that they were and are issued by the Company. *Complaint,* Exh. 21 (ECF No. 1-2, pp. 255-260), Exh. 22 (ECF No. 1-2, pp. 261-262), Exh. 24 (ECF No. 1-2, pp. 264-267). As the Proposed AC acknowledges (¶ 149), the only reference to the PAC is under Bangstad's printed signature line, which lists Bangstad as owner of the Company and "founder" of the PAC. That creates no inference that the PAC was the creator or publisher of the statements or was somehow using them for advertising or trade. Finally, the Proposed AC alleges Bangstad published the statements to a "listserv" of the PAC and to "subscribers" of the PAC. *Proposed AC*, ¶¶ 95, 150. Again, that is a publication by Bangstad, not the PAC.

Because the amendment's sole purpose in adding the PAC as a defendant to the invasion of privacy claim would be futile, the motion to amend should be denied.

## II.    PLAINTIFFS' MOTION TO REMAND SHOULD BE DENIED.

As described herein, even if the Court allows the Proposed AC, federal question jurisdiction will still exist, as the allegations against the PAC are based entirely on allegations that the PAC's conduct violates federal law. And as described herein and in Defendants' Brief Opposing Motion to Remand, plaintiffs' challenges to the PAC's independent expenditures, under

the original complaint or the Proposed AC, invoke and subject plaintiffs to FECA's administrative enforcement mechanism.

## **CONCLUSION**

Defendants respectfully request the Court deny both plaintiffs' motion to amend the complaint and motion to remand.

Dated this 21st day of August, 2025.

FOX, O'NEILL & SHANNON, S.C.
Attorneys for Defendants

By: */s/ Electronically signed by Matthew W. O'Neill*
MATTHEW W. O'NEILL
State Bar No. 1019269
622 N. Water Street, Suite 500
Milwaukee, WI 53202
Phone: (414) 273-3939
Email: mwoneill@foslaw.com