IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

GREGG WALKER, and
HEATHER HOLMES,

                Plaintiffs,              OPINION AND ORDER

    v.

                                           25-cv-214-wmc

KIRK BANGSTAD,
MINOCQUA BREWING COMPANY, LLC, and
MINOCQUA BREWING COMPANY SUPER PAC,

                Defendants.

---

Plaintiffs Gregg Walker and Heather Holmes filed a complaint in Oneida County Circuit Court against defendants Kirk Bangstad, Minocqua Brewing Company, LLC ("Minocqua Brewing"), and Minocqua Brewing Company Super PAC ("MBC Super PAC" or "the PAC").  Plaintiffs claim that defendants invaded their privacy in violation of Wisconsin law and seek a declaration that MBC Super PAC is the alter ego of both Bangstad and Minocqua Brewing.  (Dkt. #1-2.)  With the consent of the other defendants, MBC Super PAC removed this action based on the presence of an "embedded" federal question, then filed two motions to dismiss.  (Dkts. ##1-3, 4, 15.)  In response, plaintiffs both moved to amend their complaint and to remand, arguing that neither their original nor amended complaint states a federal cause of action, embedded or otherwise.  (Dkts. ##13, 24.)  The court will grant plaintiffs' motion to remand this case for lack of subject matter jurisdiction and, consequently, must decline to rule on all remaining motions.

## BACKGROUND

Plaintiff Gregg Walker is the owner and publisher of *The Lakeland Times* newspaper, while plaintiff Heather Holmes is its general manager and employee. (Pls.' Compl. (dkt. #1-2) ¶ 1.) Defendant Kirk Bangstad is the owner of defendant Minocqua Brewing, as well as the custodian of records and treasurer for defendant MBC Super PAC. (*Id.*, ¶ 3-4.) As noted, plaintiffs originally brought suit in Oneida County Circuit Court, claiming that: (1) defendants Bangstad and Minocqua Brewing invaded their privacy by using plaintiffs' images and likenesses in their weekly newsletters and social media posts without their consent in violation of Wis. Stat. § 995.50(2)(am)2 (*id.*, ¶¶ 107-117) ("Count I"); and (2) they are entitled to a declaration that defendant MBC Super PAC is the alter ego of both Bangstad and Minocqua Brewing (*id.*, ¶¶ 118-169) ("Count II"). As to the latter claim, plaintiffs specifically allege that Bangstad used MBC Super PAC to make several payments on his and Minocqua Brewing's behalf, allegedly supporting an inference that "Bangstad exerts total control over both Minocqua Brewing and the MBC Super PAC to such extent that their independence is only in form." (*Id.*, ¶ 160.)

Defendants timely removed this action to federal court under 28 U.S.C. §§ 1441(a) and 1331. In removing, defendants assert that this court has federal question subject matter jurisdiction over the case because Count II presents a federal question under the Federal Election Campaign Act ("FECA"), 52 U.S.C. § 30101 *et seq.*, which (among other things) governs the contributions and expenditures of political action committees. Plaintiffs originally moved to remand under 28 U.S.C. § 1447(c) (dkt. #13), but subsequently moved for leave to file an amended complaint (dkt. #24). The proposed amended complaint alleges only that all three defendants, including MBC Super PAC,

violated plaintiffs' right to privacy under Wisconsin law (previously, Count I), while eliminating a separate claim for declaratory relief under an alter ego theory (previously, Count II). Nonetheless, the proposed amended complaint still includes factual allegations supporting that theory and again requests entry of declaratory judgment that defendants are alter egos as part of their remedies for defendants' alleged invasion of privacy. (Dkt. #24-1.) Thus, upon filing their motion for leave to amend, plaintiffs also supplemented their motion to remand relying on their proposed, arguably narrowed amended complaint, although plaintiffs assert that neither complaint states a federal claim under FECA and, therefore, there is no basis for this court to exercise federal question jurisdiction. (Dkt. #23.) In response, however, defendants argue that the proposed amended complaint still raises all the same federal questions as the original. (Dkt. #25.) Because the arguments as to this court's jurisdiction are consistent between the two complaints, as defendants concede (*see id.*, at 5), the court first turns to the motion to remand.[1]

OPINION

Defendants assert that this court has jurisdiction because plaintiffs' claims present an "embedded" federal question and FECA preempts plaintiffs' state claim, while plaintiffs not only dispute this basis for removal but seek attorney's fees to boot. The court addresses each argument in turn.

---

[1] In particular, the court declines to address defendants' alternative argument that plaintiff's proposed amendment would be futile because they fail to state a claim that the MBC Super PAC invaded their privacy, which would require the same analysis on the merits as a motion to dismiss under Fed. R. Civ. P. 12(b)(6). (Dkt. #25, Sec. I(B).) *See Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 277–78 (7th Cir. 2020) (court must decide jurisdiction before ruling on the merits).

3

## I.    Embedded Federal Question Jurisdiction

"The party seeking removal has the burden of establishing federal jurisdiction" under 28 U.S.C. § 1441(a), and federal courts are to "interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court." *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009).  Unless the party seeking removal establishes that the case raises a federal question, therefore, the court must remand the case.  *Smart v. Local 702 Int'l Bhd. of Elec. Workers*, 562 F.3d 798, 802 (7th Cir. 2009).[2]

Defendants argue this court has federal question jurisdiction over this case under 28 U.S.C. § 1331 because "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 27-28 (1983).  More specifically, they argue that because plaintiffs' alter ego claim "goes to the heart of FECA's governance and exclusive enforcement mechanism," and the claim cannot be resolved without material, substantive resort to FECA, this court has federal question jurisdiction.  (Dkt. #20, at 3.) On the other hand, plaintiffs argue that the amended complaint solely alleges state law claims, as their invasion of privacy claim and assertion of liability is based on Wisconsin state law, and even their original complaint does not allege any violations of FECA or even invoke that statute.

---

[2] Of course, removal is also possible under 28 U.S.C. § 1441(b) if the parties are completely diverse and the amount in controversy exceeds $75,000, but neither seems to be the case here.

Few claims originating in state law present an "embedded" federal question that both satisfies federal question jurisdiction under § 1331 and requires adjudication in a federal forum. *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). "[M]erely call[ing] upon a constitutional provision, a federal statute, or a principle of federal common law in the complaint" does not create an embedded federal question such that a federal court may exercise subject matter jurisdiction. *E. Cent. Illinois Pipe Trades Health & Welfare Fund v. Prather Plumbing & Heating, Inc.*, 3 F.4th 954, 958 (7th Cir. 2021). Instead, courts apply a four-part test to determine whether an action has an embedded federal question. *Gunn v. Minton*, 568 U.S. 251, 258 (2013). Within the state claim, a federal issue must be "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.*

Starting with the first factor, defendants assert that plaintiffs "necessarily raise" the issue of whether MBC Super PAC's expenditures violate FECA because plaintiffs' alter-ego allegations center around that PAC's alleged spending on behalf of Bangstad and Minocqua Brewing. In particular, defendants argue that a finding that the PAC is acting as Bangstad's alter ego would *require* a court to determine whether its expenditures were permissible, "independent expenditures" under FECA, 52 U.S.C. § 30101(17). *See Tobiason v. BMO Bank N.A.*, 758 F. Supp. 3d 927, 932 (E.D. Wis. 2024) ("A state law claim necessarily raises a question of federal law within the meaning of *Grable* only if it is 'impossible to decide' the state law claim without deciding a federal law issue.") (quoting *Hartland Lakeside Joint No. 3 Sch. Dist. v. WEA Ins. Corp.*, 756 F.3d 1032, 1035 (7th Cir. 2014)).

5

In Wisconsin, liability under the alter-ego doctrine requires proof of three elements:

(1) control, not mere majority or complete stock control, but complete domination, not only of finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own;

(2) such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or dishonest and unjust act in contravention of plaintiff's legal rights; and

(3) the aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

*Consumer's Cty.-op v. Olsen*, 142 Wis. 2d 465, 484 (1988) (citation omitted).

Applying this standard, alleged liability under the alter-ego doctrine does not *necessarily* raise the question of whether the PAC's expenditures violate federal campaign finance laws. *Tobiason*, 758 F. Supp. 3d at 932. In particular, plaintiffs need not prove that the PAC violated FECA in order to establish that it is an alter ego, because alter ego liability turns on control and intentional misuse under Wisconsin law, *not* on the legality of the PAC's expenditures under federal law. Certainly, plaintiffs include factual allegations regarding MBC Super PAC's spending and business decisions to claim that Bangstad's personal, political, and business endeavors are so intertwined that they are indistinguishable from each other, such that the PAC may also be held financially liable for the alleged invasion of plaintiff's privacy under the Wisconsin alter-ego doctrine.[3]

---

[3] As previously described, the proposed amended complaint alleges that MBC Super PAC *itself* invaded plaintiffs' privacy by distributing the images at issue and seeks a declaration that the PAC acts as an alter ego of both of the other defendants under Wisconsin law as a remedy for the tort claim, rather than as a separate count. As such, the jurisdictional analysis applies equally to the original and proposed amended complaint, as defendant concedes. (Dkt. #25, at 5.) Thus, the court need not address the motion to amend itself to resolve the jurisdictional question.

However, even if a legal conclusion that the PAC acts as Bangstad's alter ego raises questions about defendants' compliance with federal campaign finance laws, it is not *necessary* to resolve specific questions about the propriety of "independent expenditures" under federal campaign regulations in order to determine whether the PAC acts as an alter ego under *Wisconsin law*. For similar reasons, under the second factor, the federal issue is also not "actually in dispute" on the face of the complaint because plaintiffs make *no* allegations that require the application or interpretation of FECA in order to prevail on their state law invasion-of-privacy or alter-ego claims. *Gunn*, 545 U.S. at 315.

Turning to the third factor, any alleged federal issue here is not "substantial," as it is wholly fact-bound and specific to the parties, not one that is important to the federal system as a whole. *See Bennett v. Sw. Airlines Co.*, 484 F.3d 907, 910 (7th Cir. 2007) (finding no federal question jurisdiction where the case "involved a fact-specific application of rules stemming from both federal and state law rather than a context-free inquiry into the meaning of a federal law"). Likewise, the question of federal law is not substantial because it would neither be "dispositive of the case" nor "controlling in numerous other cases." *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 700 (2006). Again, even if the answer to the question of whether the PAC is legally an alter ego for the other two defendants raises questions about whether the PAC violated federal election laws, an adjudication of that federal question would not be dispositive of the alter ego claim under Wisconsin law or vice versa. Indeed, a resolution of the state law claim would not obviously apply to any separate FEC enforcement actions from the face of the complaint. In the same vein, the federal question raised by defendants is not "substantial" because no federal agency has a "direct interest in the availability of a federal forum to vindicate its own

7

administrative action."  In fact, no federal administrative action preceded this state law

dispute.  *Grable*, 545 U.S. at 315.

For the same reasons, turning to the fourth and final factor, a state court's

adjudication of this state law, alter-ego claim would not "disrupt the federal-state balance"

designed by Congress, whether with respect to the FEC or otherwise.  *Grable*, 545 U.S. at

314.  Therefore, plaintiffs' claims lack an embedded federal question.

## II.    Preemption

Defendants also claim that *only* a federal court can exercise jurisdiction over

plaintiffs' claims, as FECA preempts state law as applied to plaintiffs' claims.  Federal law

may (a) expressly preempt state law by statute, or (b) impliedly preempt state law where

"federal interest in the field is so dominant that it precludes enforcement of state laws on

the same subject."[4] *Janvey v. Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d 185, 200

(5th Cir. 2013) (cleaned up) (quoting *Hillsborough Cnty., Fla. v. Automated Med. Labs., Inc.*,

471 U.S. 707, 713 (1985)).  As for the former, FECA's preemption statute, 52 U.S.C.

§ 30143(a), and its implementing regulations, 11 C.F.R. § 108.7(b)(1)–(6), only "expressly

preempt[] laws that *directly affect* the responsibility to register with the FEC, to disclose

receipts and expenditures, limitations on those receipts and expenditures [regarding

Federal candidates and political committees, 11 C.F.R. § 108.7(b)(2)–(3)], and other laws

---

[4] Conflict preemption applies "where complying with both federal law and state law is impossible; or (2) where the state law 'creates an unacceptable obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Janvey v. Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d 185, 200 (5th Cir. 2013) (citation omitted).  Here, defendant argues only that express and field preemption apply.

directly related to FECA's purpose." *WinRed, Inc. v. Ellison,* 581 F. Supp. 3d 1152, 1169 (D. Minn. 2022) (emphasis added), *aff'd, WinRed, Inc. v. Ellison*, 59 F.4th 934 (8th Cir. 2023); *see also Karl Rove & Co. v. Thornburgh*, 39 F.3d 1273, 1281 (5th Cir. 1994) ("The primary purpose of FECA . . . is to regulate campaign contributions and expenditures in order to eliminate pernicious influence—actual or perceived—over candidates by those who contribute large sums.")

Moreover, FECA's preemption statute and implementing regulations are to be interpreted *narrowly*, so FECA typically does *not* preclude state-law causes of action that do not directly address its purpose of regulating federal campaigns. *WinRed,* 581 F. Supp. 3d at 1169 ("FECA does not expressly preempt state laws of general applicability merely because those laws are applied to committees whose sole activities are directed at federal elections."). Regardless, FECA certainly does not expressly preempt plaintiffs' Wisconsin law claims for invasion of privacy and alter-ego liability, both of which fall outside the text of FECA's express preemption provision and implementing regulations, much less "implicate the core concerns of FECA." *Janvey*, 712 F.3d at 200–201; *see also Karl Rove*, 39 F.3d at 1280–81 (holding that FECA does not expressly preempt a state law claim that a candidate is contractually liable for the debts of his principal campaign committees).

As for defendants' assertion of field-preemption, they argue that plaintiffs' claims "are intertwined with and subject to, and could only be resolved through, the exclusive enforcement mechanism and administrative procedures of" FECA and the Federal Election Commission ("FEC"). (Dkt. #25, at 2.) Generally, defendants' assertion runs headlong into a strong presumption *against* preemption in "field[s] traditionally occupied by the States," such as the common-law torts asserted by plaintiffs. *WinRed,* 59 F.4th at 942

9

(quoting *Altria Grp., Inc. v. Good*, 555 U.S. 70, 77 (2008)).  And as defendants correctly point out, *the FEC* has exclusive power to initiate proceedings to enforce FECA's requirements, and FEC enforcement is "the exclusive civil remedy for the enforcement" of FECA.  52 U.S.C. § 30107(a), (e).  For reasons already explained, plaintiffs are also asserting *no* violations of FECA, and neither FECA nor the FEC has "implicitly occupied [the] legislative field" regarding *any* and *all* claims involving a PAC's business and financial decisions such that there "is no room for state law."  *WinRed*, 59 F.4th at 941 (citations omitted).  Finally, to assert that only the FEC could hear claims touching on a PAC's expenditures would preclude all plaintiffs from asserting state common-law claims regarding a PAC's business operations, which is far from what FECA's exclusive-enforcement provision intended.  *See id.* at 943–944 (rejecting the idea that FECA preempts all state causes of action that "concern" or "relate to" federal elections); *see also Stern v. Gen. Elec. Co.,* 924 F.2d 472, 475 (2d Cir. 1991) ("Congress did not intend to preempt state regulation with respect to non-election-related activities.").

Similarly, allowing plaintiffs' claims to proceed in state court would in no way undermine the FEC's exclusive enforcement provision, as plaintiffs are not seeking civil remedies for the violation of federal election laws.  Neither are plaintiffs skirting FECA's comprehensive regulatory mechanism as defendants assert.  Instead, they are alleging facts about the PAC's activities and operations to assert a state tort claim and pierce the defendants' corporate veil, both claims ordinarily asserted before state courts and not pre-empted by FECA or the FEC.  *See McAferty v. Musk,* 795 F. Supp. 3d 949 (W.D. Tex. 2025) (allowing state common law fraud and breach of contract claims to proceed against a PAC); *Seagull v. WinRed, Inc.,* No. X07-HHD-CV22-6154527-S, 2023 WL 4322714, at *1

10

(Conn. Super. Ct. June 28, 2023) (allowing state claim for unfair or deceptive trade practices to proceed against PAC).

As plaintiffs' state, their common law claims do not necessarily raise a substantial, disputed federal law or regulation that a federal court must interpret, much less disrupt the federal-state balance approved by Congress, so their claims do not "arise under" federal law, and defendants have failed to establish federal question jurisdiction. Likewise, FECA does not expressly or impliedly preempt resolving plaintiffs' claim under state law. Thus, a Wisconsin state court may interpret and apply Wisconsin law on invasion of privacy and the alter ego doctrine as applied to defendants, including the MBC Super PAC. Because defendants cannot establish federal question jurisdiction, the court must grant plaintiffs' motion to remand and leave the parties' other, pending motions for leave to amend and to dismiss (dkts. ##4, 15, 24) for the state court to resolve, with the final exception being plaintiffs' fee request under 28 U.S.C. § 1447(c) as addressed below.

### III.    Plaintiff's Request for Fees

"An order remanding [a] case [back to state court] *may* require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." § 1447(c) (emphasis added). Absent unusual circumstances, however, attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal. *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). Here, defendants made a good-faith argument that plaintiffs' complaint required the resolution of an embedded federal question involving expenditures and contributions under FECA. *See Lott v. Pfizer,*

*Inc.*, 492 F.3d 789, 793 (7th Cir. 2007) ("[I]f clearly established law did not foreclose a defendant's basis for removal, then a district court should not award attorneys' fees."). On that basis, plaintiffs' request for an award of costs and attorney's fees incurred as a result of defendants' removal will be denied.

ORDER

IT IS ORDERED that:

1. Plaintiffs' motion to remand (dkt. #13) is GRANTED.

2. Plaintiffs' motion for costs (dkt. #13) is DENIED.

3. The court DECLINES to rule on the pending motions to amend and dismiss. (Dkts. ##4, 15, 24.)

4. The clerk of court is directed to REMAND this case to the Circuit Court for Oneida County for further proceedings.

Entered this 20th day of May, 2026.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

12